FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 14 2003

JAMES W. McCORMACK, CLERK
By:_____ CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

CURTIS A. JOHNSON, III                                                PLAINTIFF

v.      No. 4-01-CV-00245 SMR

WAL-MART STORES, INC.                                        DEFENDANT

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

1. Plaintiff Curtis Johnson was hired on January 7, 1995, as a loss prevention associate. He was promoted to District Loss Prevention Supervisor on March 18, 1995, and assigned to supervise a Loss Prevention district in North Carolina. He was later transferred to supervise a Loss Prevention district in Ohio.

2. In May 1998, Plaintiff transferred to the Loss Prevention district in northwest Arkansas which consisted of approximately ten stores in northwest Arkansas and southeast Oklahoma. Plaintiff was raised in Little Rock and graduated from the University of Arkansas where he was a Razorback football player. He was pleased with this transfer because he wanted to come back to Arkansas. (Depo. of Plaintiff, p. 107, attached to Motion for Summary Judgment as Exhibit 1.)[1]

3. The Loss Prevention Division at Wal-Mart is responsible for ensuring the protection of the Company's assets. A Loss Prevention district is generally co-extensive with an Operations district. The Loss Prevention Division serves as support to stores in the district. In-store loss prevention associates report dually to a District Loss Prevention Supervisor and to the store management where they are based. The store managers report to an Operations District Manager. (Depo. of Glenda Fleming, p. 10, Exhibit 2; Affidavit of Glenda Fleming, Exhibit 3.)

---
[1] All exhibits are attached to Defendant's Motion for Summary Judgment.

4.      The primary duty of a DLPS is to provide support to the managers in the stores in the district. This includes auditing the financial aspects of the stores, training of associates, conducting investigations of associate policy violation and loss by customer and associate theft, and the responsibility for signage and camera surveillance. It is critical that a DLPS be accessible to the Operations District Manager and to store management in the various stores in the district at all times, or designate an available back-up person so that any issues involving integrity or loss can be addressed immediately. (Exh. 2, Depo. of Glenda Fleming, pp. 10, 30, 41.)

5.      A DLPS reports to a Loss Prevention Regional Director. Glenda Fleming ("Fleming") became Plaintiff's supervisor in February 2000. Prior to that, Plaintiff's Regional Director from February 1999 to January 2000 was John (J.J.) Blevins ("Blevins").

6.      Wal-Mart policy requires that Loss Prevention supervisors update their voice mail daily by 7:30 a.m., when changing store locations, and when leaving the store for the evening. The voice mail greeting should include how to contact the supervisor, and if the supervisor will be unavailable, how to contact the supervisor covering the area or the Home Office Loss Prevention. Policy also requires that the supervisor check the voice mail a minimum of three times a day. (Wal-Mart's Voice Mail Policy-LPG 203, Exhibit 5.) In the Loss Prevention Division, this is especially crucial because the stores must be able to contact the DLPS if an integrity issue or other situation arises. (Exh. 3, Affidavit of Fleming.)

7. When Fleming assumed responsibility for the region which included Plaintiff's district, she issued a memorandum to all of her direct reports informing them of her reporting procedures and expectations to which they would be held accountable:

> This memo outlines the reporting procedures and requirements that you will be held accountable for throughout the year. Many of the expectations are standards you have been following already and will not be a major change.
>
> <u>Voice Mail / Itinerary</u>
>
> Voice mail should be updated daily and include the following information: Store #, location, and store phone #. Supervisors should be in the store no later than 8:00 a.m. unless there is extensive travel involved. Any travel during the day from store to store should be updated on your voice mail with destination and anticipated arrival time noted. This is not only important information for myself to know but also for your stores and family in case of emergency situations.

In addition, Fleming addressed the vacation policy in this memo: "Please notify me in advance when you would like to take vacation time and who you have set up to cover your district while you are gone." (Region 42 Loss Prevention Reporting Procedures & Expectations, Exhibit 7.)

8. Loss Prevention managers are held to a high standard of compliance with company policy because of the nature of the job. Since they are charged with investigation and enforcement of policy violations by other associates, it is imperative that they adhere to the policies themselves. (Exh. 2, Depo. of Fleming, pp. 60-61.)

9. On April 5, 2000, April 26, 2000, June 14, 2000, and again on June 16, 2000, Plaintiff failed to timely respond to voice mail messages from Ms. Fleming, who discussed this verbally with Plaintiff. (Exh. 2, Depo. of Fleming, pp. 34-35.) Fleming had also warned Plaintiff that the consequences of not updating his voice mail would be a performance coaching issue. (Exh. 1, Depo. of Plaintiff, p. 74.)

10. On Monday morning, July 3, 2000, Ms. Fleming checked the voice mail of all the DLPS's who reported to her. The message on Plaintiff's voice mail still said it was Friday, June 30. She called the stores in Plaintiff's district but no one knew where Plaintiff was. She left Plaintiff a message to call her. Plaintiff picked up that message at 11:42 p.m. on July 3, 2000. (Exh. 2, Depo. of Fleming, pp. 35-36.)

11. Ms. Fleming checked voice mail again at approximately 6:30 a.m. on Wednesday morning, July 5, 2000. Plaintiff's message still said it was Friday, June 30th. At around 11:00 a.m. on July 5, 2000, Plaintiff finally called Ms. Fleming. (Exh. 2, Depo. of Fleming, pp. 36-37.)

12. Plaintiff had not requested a day of vacation for July 3, 2000. Nor did he notify his supervisor, Ms. Fleming, any of his direct reports, the management in the stores for which he was responsible, or anyone else, that he would not be at work on July 3, 2000. Because his voice mail was not updated to reflect his location and he did not respond to messages left for him for a period of five days, no one knew how or where to contact him in the event that a serious situation required his immediate attention. (Exh. 3, Affidavit of Fleming.)

13. Plaintiff violated established policy, which had been reiterated in Fleming's memo of expectations, in taking off on July 3, 2000, without requesting a day of vacation or notifying his supervisor he would not be at work, in not keeping his voice mail updated, in not checking his voice mail, and in being out of contact with his supervisor and the stores for which he was responsible. (Exh. 3, Affidavit of Fleming.)

14. During the previous year, Plaintiff had been counseled by his supervisors about various performance problems, including:

4

A.   In November 1999, Regional Director J.J. Blevins verbally counseled Plaintiff for personal use of his company Visa card.  Plaintiff acknowledged that he understood the policy, yet he again used the card for personal use in November 1999.  (Decision-day counseling, Exhibit 9; Exh. 1, Depo. of Plaintiff, p. 275.)

B.   On December 15, 1999, Blevins instructed Plaintiff and other DLPS's in the region that they could not transfer any in-store loss prevention associates without obtaining approval from him and notifying store management.  Plaintiff ignored this directive and transferred an in-store loss prevention associate to another store without receiving approval and without notifying the store management at either store.  (Exhibit 9.)

C.   On January 13, 2000, Blevins issued a verbal coaching to Plaintiff for not paying his company credit card on time.[2]  The Visa card policy provides that any associate who appears on the 45-day late report will receive an automatic verbal counseling.  (Exh. 1, Depo. of Plaintiff, p. 54; Verbal Coaching, Exhibit 10.)

D.   On January 27, 2000, Plaintiff's supervisor, Blevins, gave Plaintiff a decision-making day[3] based upon the use of the company Visa card for personal charges in November after being previously counseled and because of his

---

[2] Certain Wal-Mart managers, including DLPS's, are issued a corporate Visa credit card for business use only.  Personal use of the company credit card is a violation of Wal-Mart's policy.  Cardholders are reimbursed by Wal-Mart for expenses and are expected to timely pay the credit card bill.  Failure to pay the credit card bill by certain dates is also a violation which results in automatic counseling.  (Corporate Visa Card Policy, PD-49, Exhibit 6.)

[3] A decision-making day is the final step in Wal-Mart's corrective action procedure.  The associate is given a day off with pay and instructed to develop a plan of corrective action to address the issues for which the discipline was issued.

5

violation of the direct order not to transfer an associate. Plaintiff was told that the next step would be termination. (Exh. 9, Decision-day counseling.)

    E.    When Regional Director Fleming received the Visa report in February 2000, she discovered that Plaintiff had again violated the company Visa card policy by charging personal items in December 1999 and January 2000. Although these charges had been made prior to the decision day counseling, Blevins was not aware at the time he issued the counseling and Plaintiff did not disclose that he had continued to use the Visa card for personal charges. Because Plaintiff had already received a decision day counseling, Fleming did not issue another formal disciplinary notice, but she did discuss this with Plaintiff on February 10, 2000. (Exh. 2, Depo. of Fleming, p. 52; Exh. 3, Affidavit of Fleming.)

    15.    During this same period, the store managers in Plaintiff's district expressed concerns that Plaintiff was not responding timely or appropriately to their loss prevention issues in their stores. This had reached a level of such gravity in December 1999 that a group of store managers had an open door meeting with Blevins to address these issues. The concerns raised by these managers included Plaintiff's failure to return voice mail messages, failure to follow up on investigations and other issues of concern to store management, failure to keep store management informed of relevant issues including activities and scheduling of the in-store associates. (Memo on Open Door Meeting, Exhibit 11.)

    16.    Plaintiff's taking a day of vacation on July 3 without notifying his supervisor and his failure to update and check his voice mails and return calls were serious and

6

flagrant violations which were grounds for disciplinary action, up to and including discharge. In light of the previous performance problems and the fact that he had received a decision-making day, Plaintiff could have been discharged. However, Fleming, Keith Aubele ("Aubele"), then Division Manager and Fleming's supervisor, recognized that Plaintiff had strengths and opportunities for advancement at Wal-Mart if he would resolve the communication issues and follow company policy. Rather than discharging the Plaintiff, the decision was made to demote him. Plaintiff was offered a position as an in-store loss prevention associate, the only position below district supervisor in the Loss Prevention Division. (Exh. 2, Depo. of Fleming, p. 37; Exh. 3, Affidavit of Fleming.)

17. Plaintiff used the open-door policy to appeal the demotion decision by requesting a meeting with David Gorman ("Gorman"), Executive Vice-president, the top person in the Loss Prevention Division. At Gorman's direction, Ramona Truax ("Truax"), Loss Prevention People Director, met with Plaintiff and investigated the decision. She agreed with Plaintiff's supervisors that Plaintiff had violated company policy which justified disciplinary action, and that he had potential and would be an asset to Wal-Mart if he would adhere to company policy. Truax recommended that Plaintiff be offered a transfer to Operations (Division I) as an assistant manager. Plaintiff's supervisors concurred that this would give Plaintiff an opportunity to resolve his problems and to continue his management career at Wal-Mart. (Exh. 2, Depo. of Fleming, pp. 37-39; Exh. 3, Affidavit of Fleming.) Plaintiff was transferred to an open assistant manager position in Hot Springs, Arkansas.

7

Respectfully submitted,

CROSS, GUNTER, WITHERSPOON
  & GALCHUS, P.C.
500 President Clinton Avenue, Suite 200
P. O. Box 3178
Little Rock, AR  72203
TEL:  (501) 371-9999
FAX:  (501) 371-0035


By: _____
Scotty Shively (AR Bar No. 81144)
**ATTORNEYS FOR DEFENDANT,
WAL-MART STORES, INC.**

## CERTIFICATE OF SERVICE

I, Scotty Shively, do hereby declare that a true and correct copy of the foregoing pleading was served via U. S. mail, postage prepaid, this _14th_ day of March, 2003.

Mr. Rickey Hicks
Attorney at Law
1100 North University, Suite 240
Little Rock, Arkansas 72207

_____
Scotty Shively

73017

8