

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| CURTIS A. JOHNSON, III | PLAINTIFF |
| v.  No. 4:01CV00245 SMR | |
| WAL-MART STORES, INC. | DEFENDANT |

## BRIEF IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT AGREEMENT

Pursuant to Local Rule 7.2(a), Defendant, Wal-Mart Stores, Inc. ("Wal-Mart"), by and through its undersigned attorneys, for its Brief in Support of its Motion to Enforce Settlement Agreement, states:

### I. INTRODUCTION

Prior to the initial trial setting in this case, the parties, Plaintiff, Curtis A. Johnson, III ("Johnson") and Wal-Mart engaged in negotiations and reached an oral settlement agreement in this case. Johnson has now reneged. This Court has the jurisdiction to enforce the oral settlement agreement because a valid settlement agreement exists, and the Court should enforce it.

"If a party to a Title VII suit who has previously authorized a settlement changes his mind . . ., that party remains bound by the terms of the agreement." *Worthy*, 756 F.2d at 1373 (quoting *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981). A settlement agreement in a § 1981 suit is no different. Consequently, Johnson "cannot avoid the deal [he] struck" with Wal-Mart. *Sheng*, 117 F.3d at 1084. Wal-Mart respectfully requests that the Court grant its Motion to Enforce Settlement Agreement, find that it has jurisdiction to enforce the settlement agreement, find that a

settlement agreement existed, enforce the settlement agreement, and dismiss this case with prejudice.

## II. FACTS

Plaintiff, Curtis A. Johnson III ("Johnson"), an employee of Wal-Mart Stores, Inc. ("Wal-Mart"), filed an action alleging that his demotion was in violation of Title VII and 42 U.S.C. § 1981. The trial on that matter was originally scheduled for the week of May 12, 2003.

Johnson and Wal-Mart, and their respective counsel, held a settlement conference on May 2, 2003. At this time, Johnson asked as part of the settlement for a transfer/promotion to a position in another division and location. Johnson wanted the option of considering several positions rather than specify one particular position. Wal-Mart arranged for Johnson to meet directly with Charlyn Jarrells ("Jarrells"), Senior Vice President, because Johnson had expressed that he trusted Jarrells. On May 5, 2003, Johnson met with Jarrells to identify and discuss several positions in which Johnson was interested and which would result in a transfer/promotion. Jarrells agreed to assist Johnson in arranging interviews for these positions. (Affidavit of Scotty Shively, attached as Exhibit 1.)

On May 7, 2003, the Court informed the parties that the case had been removed from the trial docket for the following week. On May 9, 2003, after numerous sessions of negotiations by telephone, counsel reached an agreement on the material terms of the settlement which was memorialized and faxed to Johnson's counsel, Rickey Hicks ("Hicks"). The material terms of the agreement were (1) dismissal with prejudice of Johnson's lawsuit; (2) execution by Johnson of a confidential release; (3) Wal-Mart's

payment of $30,000 to Johnson and his attorneys; (4) Wal-Mart would continue to work with Mr. Johnson to transfer/promote him to a position along the lines discussed with Jarrells with the salary determined by where his experience and qualifications fit within the salary range for the particular job; (5) and Wal-Mart would pay relocation expenses. The letter specifically stated that Johnson's counsel was to notify Wal-Mart's counsel if the letter did not reflect the agreement. (*See* May 9, 2003 Shively letter, attached as Exhibit 2.) Johnson's counsel did not object to the terms.

In order to facilitate the search for available positions and the application and interview process, Johnson's counsel requested and agreed that Johnson communicate directly with Wal-Mart in-house counsel Derek Scott ("Scott"), Jarrells, and any managers who had positions for which Johnson was applying. (Shively Aff., Ex. 1). Johnson began the process of interviewing. The first position for which he interviewed was a Pharmacy Division District Manager.

On May 27, 2003, Wal-Mart's counsel forwarded a Confidential Settlement Agreement and General Release, along with a Stipulation of Dismissal With Prejudice and Order of Dismissal With Prejudice to Johnson's counsel. (*See* May 27, 2003 Shively letter to Hicks with attached Confidential Settlement Agreement and General Release, attached as Exhibit 3.) On June 3, 2003, Johnson's counsel proposed three changes to the Settlement Agreement: (1) the division of the $30,000 between counsel and Plaintiff; (2) a paragraph stating there would be no retaliation; and (3) a request for a letter to Johnson clarifying benefits and salary for the Pharmacy Division District Manager position. (*See* June 3, 2003 letter, attached as Exhibit 4.) Both counsel for Johnson and Wal-Mart subsequently discussed and agreed that the retaliation provision

was not necessary because this was already prohibited under the law and Wal-Mart's policy. They also agreed that the request for a letter detailing the terms of the position for which Johnson had interviewed could be moot depending upon the status of the current interviews. Based upon this discussion Wal-Mart's counsel faxed Johnson's counsel a revised Confidential Settlement Agreement for his review. (*See* June 25, 2003 Shively letter, attached as Exhibit 5.)

On July 8, 2003, Johnson's counsel indicated by telephone that he was in agreement on the Confidential Settlement Agreement and Wal-Mart's counsel forwarded the original of the Agreement and General Release, Stipulation, and Order for execution. (*See* July 8, 2003 letter to Rickey Hicks, attached as Exhibit 6.)

On July 9, 2003, Johnson's counsel contacted Wal-Mart's counsel and stated that Johnson had not received a job offer for the Pharmacy Division District Manager, a position for which he had interviewed, and asked counsel to check on the status of this particular position. Wal-Mart's counsel attempted to contact Johnson's counsel several times to inform him that the interviewing manager thought Johnson needed additional training for the job and that arrangements were being made to place Johnson in training tailored to his needs, which would prepare him for the position for which he had interviewed. (Shively Aff., Ex. 1).

On July 22, 2003, Bob Randall ("Randall"), Pharmacy Division Manager, discussed with Johnson a position as Pharmacy Division District Manager in Training, which would be tailored to Johnson's needs. Johnson expressed satisfaction with the progress of these efforts. (*See* July 23, 2003 e-mail from Johnson to Scott, attached as Exhibit 7.)

4

On July 28, 2003, counsel for both parties again discussed the status of Johnson's signature on the Confidential Settlement Agreement. Because Johnson was not comfortable with being put into training prior to obtaining a permanent position, Johnson's counsel asked if Scott would talk to Johnson about the training position. (Shively Aff., Ex. 1.) On July 30, 2003, Johnson e-mailed Scott stating that he wanted a written job offer with specifics on compensation, which would be separate from the Confidential Settlement Agreement. The terms of the Settlement Agreement were not an issue. (*See* July 30, 2003 e-mail from Johnson to Scott, attached as Exhibit 8.)

On August 1, 2003, Randall contacted Johnson to confirm the offer of the Pharmacy Division District Manager in Training position, the specifics of the training, and the compensation package for both the training position and the District Manager position. Randall had attempted to contact Johnson earlier in the week and was told Johnson was on vacation. (Shively Aff., Ex. 1.)

Subsequently, on August 1, 2003, a telephone conference was held between Johnson, Johnson's counsel, Scott, and Defendant's counsel. The conference was initiated by Defendant's counsel. The purpose of the conference was to discuss exactly what Johnson wanted included in the letter on the position he had been offered and to coordinate the signing of the Settlement Agreement and forwarding the dismissal documents to the Court. Wal-Mart was informed for the first time that Johnson did not intend to honor the Confidential Settlement Agreement and that Johnson was no longer interested in a position with Wal-Mart. (Shively Aff., Ex. 1.)

## III. ARGUMENT

The material terms of the Confidential Settlement Agreement between Johnson and Wal-Mart have been agreed upon since at least July 8, 2003. Johnson had asked as part of the settlement to be allowed to transfer out of the Operations Division, where he is employed as an assistant store manager, and asked to relocate to another state. He was allowed to work directly with a Senior Vice President Charlyn Jarrells to identify positions because he had expressed that he trusted Jarrells. He received an offer on one of the positions he had identified.

There was never any agreement that Johnson would be given the first job for which he interviewed, but rather that Wal-Mart "would provide direct assistance to Johnson in locating and facilitating his transfer/promotion from his current position as Assistant Manager of Wal-Mart Store #1105 to another position for which Johnson is qualified, and subsequently interviewed and selected." Exhibits 3 and 5.

Wal-Mart has in good faith honored its agreement with Johnson and has expended great efforts to assist Johnson in securing a transfer/promotion to a position for which he is selected. Wal-Mart has also relied on the fact that this case was settled and has released its witnesses and ceased preparation for trial, which is currently set for September 29, 2003. Johnson should be required to honor his voluntary agreement, for the following reasons.

First, this Court has jurisdiction to decide whether a settlement agreement exists and whether it is enforceable. Second, a settlement agreement was reached. Third, the settlement agreement is enforceable.

### A.  This Court Has Jurisdiction To Decide Whether A Settlement Agreement Exists and Whether It Is Enforceable

Federal courts have the inherent power to enforce a settlement agreement with respect to actions pending before it. *Gatz v. Southwest Bank of Omaha*, 836 F.2d 1089, 1095 (8th Cir. 1988); *Rogler v. Standard Ins. Co.*, 2002 U.S. App. LEXIS 3288, at *8 (10th Cir. 2002) ("A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it.").

It is clear that this Court has jurisdiction to decide whether the settlement agreement is enforceable and that it has the power to enforce it. Any argument to the contrary is without merit.

## B.     A Settlement Agreement Exists

"When asked to enforce a settlement agreement, a court must first ascertain whether the parties have in fact agreed to settle and then discern the terms of that settlement." *Power Servs., Inc. v. MCI Constructors, Inc.*, 2002 U.S. App. LEXIS 10742, at *6-7 (4th Cir. June 5, 2002) (unpublished)(internal quotations omitted). "If there is a material dispute about whether a settlement agreement exists, the court 'must conduct a plenary evidentiary hearing to resolve that dispute.'" *Id.*[1]

### 1.     A Settlement Agreement Was Reached By the Parties

Arkansas law "favors amicable settlement of controversies and it is the duty of courts to encourage rather than to discourage parties in resorting to compromise as a mode of adjusting conflicting claims." *Williams v. Davis*, 9 Ark. App. 323, 325, 659 S.W.2d 514, 515 (1983). "However, a settlement is contractual in nature and to have legal validity, it must possess the essential elements of any other contract." *Id.* In other

---

[1] Wal-Mart respectfully requests, given the circumstances, that the Court continue the trial scheduled on September 29, 2003 and if necessary conduct an evidentiary hearing on that date instead to determine whether a settlement agreement exists and whether the Court should enforce it.

words, "[s]ettlement agreements are governed by basic principles of contract law." *MIF Realty L.P. v. Rochester Associates*, 92 F.3d 752, 756 (8th Cir. 1996)(citations omitted).

It is basic contract law that once an offer is accepted a binding contract is formed. *Moore v. Exelby*, 170 Ark. 908, 281 S.W.2d 671, 674 (1926). Furthermore, once a binding contract is created, the offer may not be withdrawn or revoked. *Rebsamen Ford, Inc. v. King*, 256 Ark. 541, 509 S.W.2d 543, 545 (1974). Therefore, because "[a]n agreement to end a lawsuit is construed according to contract principles," the Court must determine whether there was a meeting of the minds. *United States v. Sforza*, 326 F.3d 107, 115-16 (2d Cir. 2003).

To be enforceable, a settlement agreement must be based upon a meeting of the minds on the essential terms of the agreement. *MIF Realty L.P. v. Rochester Associates*, 92 F.3d 752, 756 (8th Cir. 1996)(citations omitted). "The meeting of the minds is an issue to be determined by examination of the totality of the circumstances." *United States v. Sforza*, 326 F.3d 107, 115-16 (2d Cir. 2003). Under Arkansas law, "'meeting of the minds' does not depend upon the subjective understanding of the parties, but instead requires only objective manifestations of mutual assent for the formation of a contract." *Thurman v. Thurman*, 50 Ark. App. 93, 97, 900 S.W.2d 221, 223 (1995).

Courts routinely enforce oral agreements to settle cases where a party attempts to back out of a settlement prior to execution of a written settlement agreement. *See Mueller*, 143 F.3d at 416; *Worthy*, 756 F.2d at 1373; *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981); *see also* note 1, *supra*. Absent a factual basis rendering it invalid, an oral agreement to settle a claim is enforceable against a

plaintiff who knowingly and voluntarily agreed to the terms of the settlement or authorized his attorney to settle the dispute. *Fulgence*, 662 F.2d at 1209.

If a party to a suit, who has previously authorized a settlement, changes his mind, that party remains bound by the terms of the agreement. *Worthy*, 756 F.2d at 1373 (citing *Fulgence*, 662 F.2d at 1209); *see also Dudley v. Hammond Sheet Metal Co.*, 2001 U.S. App. LEXIS 7598, at *2-3 (8th Cir. Apr. 23, 2001) (unpublished) (affirming district court's finding that a "valid settlement agreement existed and that [the party seeking to breach the settlement agreement] had authorized their attorney to settle according to the terms of the orally reached settlement agreement at issue"); *Jones v. International Paper Co.*, 1999 U.S. App. LEXIS 11880, *2 (8th Cir. June 8, 1999) (unpublished) (affirming district court's decision in Title VII case to enforce oral settlement agreement), *aff'g Jones v. International Paper Co.*, 5:97CV00297, Doc. No. 29 (E.D. Ark. Sept. 2, 1998) (Moody, J.) (filed under seal); *Starr v. Roche*, 2002 U.S. App. 6411, at *5 (4th Cir. Apr. 5, 2002) (affirming district court's decision that Title VII plaintiff failed "to overcome her burden of proving that the settlement agreement was not entered into knowingly and freely").

Here, the parties orally agreed to the material terms of the settlement agreement. On May 9th, after numerous telephone calls, counsel for the parties reached an agreement on all material terms. Wal-Mart's counsel sent Johnson's counsel a letter setting forth those terms and asked Johnson's counsel to advise Wal-Mart's counsel if the letter did not accurately set forth the agreement. Johnson's counsel did not offer any objection. Thereafter, on May 27th, Wal-Mart's counsel faxed to Johnson's counsel, for his approval, the Confidential Settlement Agreement and General Release,

9

along with the Stipulation of Dismissal with Prejudice and proposed Order of Dismissal with Prejudice. On June 3rd, Johnson's counsel proposed a counter-offer with only three (3) changes. Subsequently, the parties agreed to include one of those three changes. On July 8th, Johnson's counsel indicated to Wal-Mart's counsel that the parties were in agreement as to all material terms including the language in the settlement agreement.

It is clear that the parties negotiated a settlement agreement, between May 9th and July 8th, and the material terms of that settlement agreement were reached. There was offer and acceptance. There was a meeting of the minds. Thus, there is a valid and binding oral agreement to settle this case. Even if Johnson has changed his mind, he is bound by the terms of the agreement he authorized.

### 2. Hicks Had Authority to Settle for Johnson

An oral agreement to settle a claim is enforceable against a plaintiff who authorized his attorney to settle the dispute. *Fulgence*, 662 F.2d at 1209; *Mueller*, 143 F.3d at 416. "[W]hen a client gives his attorney specific authority to enter into a compromise agreement, such an agreement, if entered into by the attorney is valid and binding." *Boyd v. Larco-Industrial Painting Corp.*, 356 F. Supp. 917, 923 (W.D. Ark. 1973). Upon making a settlement within the apparent scope of the attorney's authority, the client is bound and cannot subsequently shelter himself behind a restriction upon the authority of the attorney, of which the opposing party had no notice or reason to believe existed, and which was not disclosed at the time of the transaction. *Diamond Soda Water Mfg. Co. v. Hegeman*, 74 A.D. 430, 77 N.Y.S. 417, 419 (1902).

The rules for determining whether authority has been given by the client to settle a case are the same as those which govern other principal-agent relationships. *Turner v. Burlington Northern R. Co.*, 771 F.2d 341, 345 (8th Cir. 1985). Agency is a legal concept which depends on the manifest conduct of the parties, not on their intentions or beliefs as to what they have done. *Id.* "Once it is shown that an attorney has entered into an agreement to settle a case, a party who denies that the attorney was authorized to enter into the settlement has the burden to prove that authorization was not given." *Turner*, 771 F.2d at 345-46. *See also Dudley v. Hammond Sheet Metal Co.*, 2001 U.S. App. LEXIS 7598, at *2 (8th Cir. 2001) (unpublished) (affirming district court's decision that attorney had authority to settle).

Hicks, as Johnson's attorney, had the express authority to settle on Johnson's behalf. The manifest conduct of Johnson and his attorney show that Hicks acted on his client's behalf. Johnson cannot seriously dispute that he gave his attorney the authority to settle his case. If Johnson now tries to deny that Hicks was authorized to enter into the settlement, Johnson has the burden of proving that Hicks acted without any kind of authority in agreeing to the settlement. *Turner v. Burlington Northern R. Co.*, 771 F.2d at 345-346.

In light of the above-described facts and the express authorization given to Hicks, Johnson cannot meet this heavy burden. It is clear that Hicks did have authority to settle this case. Hicks was involved in all of the settlement negotiations, some of which were conducted in Johnson's presence. Johnson cannot now say that Hicks did not have the authority to settle this case.

11

### 3. Wal-Mart Has Partially Performed

"[A]n uncertain agreement may be supplemented by subsequent acts, agreements, or declarations of the parties as to make it certain and valid." *Foundation Telecommunications, Inc. v. Moe Studio, Inc.*, 341 Ark. 231, 241, 16 S.W.3d 531, 538 (2000) (citing *Swafford Ice Cream v. Sealtest Foods*, 252 Ark. 1182, 1185, 483 S.W.2d 202, 204 (1972)). "The acts of practical construction placed upon a contract by the parties are binding and may be resorted to relieve it from doubt and uncertainty." *Id.* "The objection of indefiniteness may be obviated by performance and acceptance of performance." *Id.*

Here, there has been partial performance by Wal-Mart. Wal-Mart has continued to work with Johnson to transfer/promote him to a position along the lines he discussed with Jarrells, with the salary determined by where his experience and qualifications fit within the salary range for the particular job. Specifically, Jarrells, Randall and Scott have assisted Johnson by offering him a Pharmacy Division District Manager in Training position. It would be unfair to allow Johnson to vitiate the settlement agreement he voluntarily reached with Wal-Mart, a settlement agreement that Wal-Mart has already partially performed and performance that has inured to Johnson's benefit. Rather, Johnson should be required to perform.

### C. The Settlement Agreement Is Enforceable

Settlement agreements are generally encouraged and favored by the courts and will not be lightly set-aside in the absence of mistake or fraud. *Justine Realty v. American Nat. Can Co.*, 976 F.2d 385, 391 (8th Cir. 1992).

### 1.   Immaterial Terms Not Reached Do Not Invalidate the Settlement Agreement

"The fact that the parties left insubstantial matters for later negotiation . . . 'does not vitiate the validity of the agreement reached.'" *Worthy*, 756 F.2d at 1373 (quoting *Trnka v. Elanco Products Co.*, 709 F.2d 1223, 1227 (8th Cir. 1983*))*; see also *Sheng v. Starkey Lab., Inc.*, 117 F.3d 1081, 1083 (8th Cir. 1997) ("The fact that the parties left some details for counsel to work out during later negotiations cannot be used to abrogate an otherwise valid agreement.").

The details of how Wal-Mart would assist Johnson to transfer/promote him were immaterial terms to be worked out by the parties afterwards. The fact that Johnson did not get the first job for which he interviewed or that Wal-Mart would not promise him a specific job does not vitiate the validity of the settlement agreement. Rather, Wal-Mart was fulfilling its obligation under the settlement agreement to assist Johnson to transfer/promote him to a position along the lines he discussed with Jarrells, commensurate with his experience and qualifications. Specifically, Wal-Mart was offering Johnson additional training so that he would be qualified for the job for which he had previously and unsuccessfully applied and continued to show desire. The material term was that Wal-Mart would assist him in being transferred/promoted, and Wal-Mart was doing this. Transfer to the training position itself was a promotion, and after training, Johnson would obtain the position he desired.

### 2.   Fact that Settlement May Be Disadvantageous to Johnson Is Irrelevant

"[P]arties to a voluntary settlement agreement cannot avoid the agreement simply because the agreement ultimately proves to be disadvantageous." *Worthy*, 756

13

F.2d at 1373 (citing *Trnka*, 709 F.2d at 1227). A party cannot rescind an otherwise voluntary agreement to settle because that party now feels the settlement is "paltry." *Id.* "Such agreements are binding without regard to which party gets the best of the bargain or whether all the gain is in fact on one side and all the sacrifice on the other." *Williams v. Davis*, 9 Ark. App. 323, 325, 659 S.W.2d 514, 515 (1983).

Johnson's unhappiness with the settlement is certainly no reason to abrogate it. In fact, it is irrelevant. The settlement was entered into voluntarily. There was a meeting of the minds. Even if Wal-Mart were to receive all the gain and Johnson was making all the sacrifice, which is hardly the case, Johnson cannot now refuse to abide by the settlement agreement simply because he now does not like the terms of settlement. Johnson was given every opportunity to negotiate for different terms. He did not object to the terms of the final document and in fact it was Johnson who proposed the term at issue.

### 3. There Was No Mistake or Fraud

"Practically every settlement . . . involves the element of chance as to future consequences and developments. There are usually unknown and unknowable conditions . . . that may affect the ultimate recovery or failure or recovery. Mutual ignorance of their existence cannot constitute 'mutual mistake.'" *Sheng v. Starkey Lab., Inc.*, 117 F.3d 1081, 1084 (8th Cir. 1997). Thus, "[a] party may not avoid a contract on the grounds of mutual mistake when it assumed the risk of that mistake." *Id.*

There is no evidence whatsoever of any mistake or fraud in this case. If Johnson attempts void the settlement agreement on either basis, it is Johnson's burden to convince the Court that fraud or mistake was present here. This he cannot do because

there is no evidence of either fraud or mistake. The fact that Johnson assumed the risk of settlement and he has since had a change of mind does not equate to fraud or mistake.

## IV.   CONCLUSION

For these reasons, the Court has jurisdiction, a settlement agreement exists, the Court should enforce the settlement agreement, and the Court should dismiss this case with prejudice.

> Respectfully submitted,
>
> CROSS, GUNTER, WITHERSPOON
>    & GALCHUS, P.C.
> 500 President Clinton Ave., Suite 200
> P. O. Box 3178
> Little Rock, AR  72203
> TEL:  (501) 371-9999
> FAX:  (501) 371-0035
>
> By: _____
>       Scotty Shively (AR Bar No. 81144)
>
> **ATTORNEYS FOR DEFENDANT
> WAL-MART STORES, INC.**

### CERTIFICATE OF SERVICE

I, Scotty Shively, hereby state that a copy of the foregoing pleading was served the following on by U.S. Mail, postage prepaid, on this /2\*\*~day of August, 2003:

> Rickey Hicks
> Attorney for Plaintiff
> 1100 North University, Suite 240
> Little Rock, Arkansas 72207

_____
Scotty Shively

79878

UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

*Exhibits Attached to Original Document in Courts's Case File*